UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LAWRENCE TAVARES and
JOANNA TAVARES,

      Plaintiffs,

vs.                                            Case No. 3:22-cv-554-MMH-MCR

PELICAN INTERNATIONAL, INC.,
et al.,

      Defendants.
_____/

**O R D E R**

      **THIS CAUSE** is before the Court sua sponte. Federal courts are courts of limited jurisdiction and therefore have an obligation to inquire into their subject matter jurisdiction. See Kirkland v. Midland Mortg. Co., 243 F.3d 1277, 1279–80 (11th Cir. 2001). This obligation exists regardless of whether the parties have challenged the existence of subject matter jurisdiction. See Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999) ("[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking."). "In a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C.

§ 1332(a)." Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1469 (11th Cir. 1997).

On May 19, 2022, Defendant Pelican International, Inc. (Pelican), filed a Notice of Removal (Doc. 1; Notice) removing this case from the Circuit Court, Fourth Judicial Circuit in and for Duval County, Florida. See id. at 1. In the Notice, Pelican asserts that this Court has diversity jurisdiction over the instant action pursuant to 28 U.S.C. § 1332(a). See Notice at 3. However, upon review of the Notice and Complaint (Doc. 4; Complaint), the Court finds that Pelican fails to allege sufficient facts to establish the citizenship of the parties and to plausibly demonstrate that the amount in controversy exceeds $75,000.

First, Pelican does not sufficiently allege the citizenship of the parties. For a court to have diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), "all plaintiffs must be diverse from all defendants." Univ. of S. Ala., 168 F.3d at 412. To establish diversity over a natural person, a complaint must include allegations of the person's citizenship, not where he or she resides. See Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994). A natural person's citizenship is determined by his or her "domicile," or "the place of his true, fixed, and permanent home and principal establishment . . . to which he has the intention of returning whenever he is absent therefrom." McCormick v. Aderholt, 293 F.3d 1254, 1257–58 (11th Cir. 2002) (quotation and citation omitted). Here, although Pelican appears to allege Plaintiffs' domicile, Pelican does so only

"[u]pon information and belief." See Notice at 3.  Allegations premised only on "information and belief," are plainly insufficient to establish the citizenship of Plaintiffs as necessary to invoke this Court's subject matter jurisdiction.  See, e.g., Payne v. Ivy, No. 6:18-cv-3-Orl-18KRS, 2018 WL 1155987, at *1 (M.D. Fla. Jan. 22, 2018) ("Allegations made 'upon information and belief' are not sufficient to support jurisdictional allegations, however."); Matos-Cruz v. JetBlue Airways Corp., No. 6:17-cv-380-Orl-37TBS, 2017 WL 3268956, at *2 (M.D. Fla. Aug. 1, 2017) ("Courts have held that allegations concerning a party's citizenship based only 'on information and belief' are insufficient."); Principle Solutions LLC v. Feed.ing BV, No. 13-C-223, 2013 WL 2458630, at *2 (E.D. Wis. June 5, 2013).

Pelican also alleges insufficient information regarding the citizenship of the corporate Defendants.  "The federal diversity jurisdiction statute provides that 'a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.'" Hertz Corp. v. Friend, 559 U.S. 77, 80 (2010) (quoting 28 U.S.C. § 1332(c)(1)). In Hertz, the Supreme Court defined "principal place of business" to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities," also known as its "nerve center." Id. at 92–93. In practice, this normally is "the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction,

- 3 -

control, and coordination . . . and not simply an office where the corporation holds its board meetings." Id. at 93. Here, Pelican asserts that it is a corporation organized under the laws of Canada "with its headquarters in Quebec, Canada." Notice at 4. Similarly, Pelican asserts that unserved Defendant Zorg, Inc., is a Canadian corporation with its headquarters in Quebec, Canada, and that unserved Defendant Dick's Sporting Goods, Inc., is a Delaware corporation with its headquarters in Pennsylvania. Id. A corporation's headquarters is normally, but not necessarily, its principal place of business. See Hertz, 559 U.S. at 93. Therefore, Pelican must clarify the location of each Defendant's principal place of business.

In addition, the Court finds that Pelican's allegations as to the amount in controversy are also insufficient. Where a defendant removes an action from state court to federal court, the defendant "bears the burden of proving that federal jurisdiction exists." See Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001). In Dart Cherokee Basin Operating Co. v. Owens, the Supreme Court explained that a defendant's notice of removal must include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." See 574 U.S. 81, 89 (2014). If the plaintiff contests the allegation, or the court questions it, a defendant must then present evidence establishing that the amount in controversy requirement is met. Id. (citing 28 U.S.C. § 1446(c)(2)(B)); see also Dudley v. Eli Lilly & Co., 778 F.3d 909, 912 (11th Cir.

2014).  Notably, "[a] conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden." See Williams, 269 F.3d at 1320.  Indeed, the Court may not speculate or guess as to the amount in controversy.  See Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010).  Rather, a removing defendant should make "specific factual allegations establishing jurisdiction" and be prepared to "support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations."  Id. at 754 (emphasis added).  In those circumstances, a court is able to determine the amount in controversy without relying on impermissible "conjecture, speculation, or star gazing." Id.[1]

Here, Pelican fails to present a "plausible allegation" of the amount in controversy.  This case arises out of an incident in which a kayak sank while Plaintiffs and their five-year-old son were inside.  See Complaint ¶¶ 9–11.  In

---

[1] The Court notes that Dart, Dudley, and Pretka, all involved cases removed to federal court under the Class Action Fairness Act of 2005 (CAFA).  Because remand orders are not ordinarily reviewable on appeal, except in class action cases, see 28 U.S.C. § 1447(d), § 1453(c), appellate decisions on removal usually involve cases removed under CAFA.  See, e.g., Pretka, 608 F.3d at 752.  Nonetheless, with limited exception, "CAFA's removal provision expressly adopts the procedures of the general removal statute, 28 U.S.C. § 1446." Pretka, 608 F.3d at 756–57 & n.11 (citations omitted).  Thus, although the cases cited above involved removal under CAFA, they interpret and apply the general removal procedures, and the Court finds the analysis of those cases applicable here.  See Bender v. Mazda Motor Corp., 657 F.3d 1200, 1204 n.2 (11th Cir. 2011) (addressing an appeal involving a non-CAFA removal and citing to Pretka as authority regarding removal procedures).

the Complaint, Plaintiffs allege that damages exceed $30,000, exclusive of costs. See id. ¶ 1. Plaintiffs assert that as a result of the kayaking incident, they "suffered damages, including . . . permanent physical injury and resulting pain and suffering, disability, mental pain and suffering, and loss of capacity for enjoyment of life," in addition to "the expense of hospitalization, medical and nursing care and treatment, loss of earnings, [and] loss of ability to earn money." Id. ¶¶ 17, 32. Plaintiffs further allege that the losses are "permanent and continuing." Id. In support of removal, Pelican merely points to these allegations and states that "Plaintiffs have made a settlement demand far in excess of $75,000." Notice at 3.

Pelican's recitation of the generic, vague and categorical allegations of the Complaint, combined with an undetailed reference to a settlement demand, do not provide the Court with any specific, factual information by which to determine whether Plaintiffs' damages plausibly exceed the jurisdictional threshold. Indeed, based on the allegations in the Notice and Complaint, the Court can discern only that Plaintiffs suffered some sort of physical injuries when the kayak sank. See Complaint ¶¶ 11, 15, 17, 32; Notice at 3. The Court can do no more than speculate regarding the nature and severity of those injuries and whether they implicate damages in excess of $75,000. Thus, "without facts or specific allegations, the amount in controversy [can] be 'divined [only] by looking at the stars'—only through speculation—and that is

- 6 -

impermissible." Pretka, 608 F.3d at 753–54 (third alteration in original) (quoting Lowery v. Ala. Power Co., 483 F.3d 1184, 1209, 1215 (11th Cir. 2007)). In the absence of any information regarding the nature of Plaintiffs' injuries, or the cost of their subsequent medical care or loss of earning capacity, the Court is unable to determine whether the amount in controversy requirement is satisfied here.

Pelican's reference to the settlement demand is also insufficient. "When referencing a demand letter to ascertain the amount in controversy, courts analyze 'whether demand letters merely reflect puffing and posturing or whether they provide specific information to support the plaintiff's claim for damages.'" See Boyd v. State Farm Mut. Auto. Ins. Co., No. 6:15-cv-1965-Orl-22TBJ, 2015 WL 12838805, at *2 (M.D. Fla. Dec. 16, 2015) (quoting Moser v. Cincinnati Ins. Co., No. 8:14-cv-3121-CEH-TWG, 2015 WL 628961, at *2 (M.D. Fla. Feb. 12, 2015)). If a pre-suit demand letter provides "a reasonable assessment of the value of the claim," then it is "more indicative of the true amount in controversy," especially where the letter "contains supporting information, such as medical bills or a specific medical diagnosis." Id. (internal quotation omitted); see also Hernandez v. Burlington Coat Factory of Fla., LLC, No. 2:15-cv-403-FtM-29CM, 2015 WL 5008863, at *2 (M.D. Fla. Aug. 20, 2015). In contrast, a demand for a lump sum amount "without the slightest suggestion how in the world the plaintiff[] could support such a figure," is considered

nothing more than mere posturing. Jackson v. Select Portfolio Servicing, Inc., 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009). Here, Pelican does not provide the Court with any information explaining on what facts, if any, Plaintiffs substantiated the demand. Without more information, the Court cannot discern whether Plaintiffs' demand "far in excess of $75,000," Notice at 3, amounts to a reasonable assessment of the value of the claim or is more akin to mere "puffing and posturing." As such, Pelican has failed to provide the Court with sufficient information for the Court to determine whether it has jurisdiction over this action.[2]

In light of the foregoing, the Court will give Pelican an opportunity to provide the Court with additional information as to the parties' citizenship, the

---

[2] Indeed, carefully ascertaining the citizenship of the parties and whether the Court has subject matter jurisdiction over this action is more than just an academic exercise, as is evident from two Eleventh Circuit cases decided in 2017. See Thermoset Corp. v. Bldg. Materials Corp of Am., 849 F.3d 1313, 1316–1317 (11th Cir. 2017) (vacating summary judgment order after three years of litigation where court determined on appeal that the pleadings below had not sufficiently alleged the citizenship of a defendant limited liability company, and upon further inquiry, found that the defendant limited liability company had a non-diverse member); see also Purchasing Power, LLC v. Bluestem Brands, Inc., 851 F.3d 1218, 1222, 1228 (11th Cir. 2017) (discussing whether sanctions were warranted in a case where summary judgment was reversed on appeal after the appellate court discovered that the pleadings did not sufficiently allege the citizenship of the plaintiff LLC, leading to the realization that there was no diversity jurisdiction) ("While the requirements of diversity jurisdiction in this scenario are complicated, they are the law. No party in this case acted with bad intentions, but the result was a colossal waste of time and effort. We trust that the damage done to the parties' credibility, finances, and time is enough of a sanction to curb their conduct and to serve as a warning to future diversity jurisdiction litigants. In the end, when the parties do not do their part, the burden falls on the courts to make sure parties satisfy the requirements of diversity jurisdiction. We must be vigilant in forcing parties to meet the unfortunate demands of diversity jurisdiction in the 21st century.").

amount in controversy, and this Court's diversity jurisdiction over the instant action.  Accordingly, it is

**ORDERED:**

Defendant Pelican International, Inc., shall have up to and including **June 10, 2022**, to provide the Court with sufficient information so that it can determine whether it has diversity jurisdiction over this action.

**DONE AND ORDERED** in Jacksonville, Florida, on May 23, 2022.

*[signature]*
MARCIA MORALES HOWARD
United States District Judge

lc30
Copies to:

Counsel of Record
Pro Se Parties